# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| SHELTON M. FRYE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 08-0340-WS-N |
| | ) | |
| ESCAMBIA COUNTY BOARD OF | ) | |
| EDUCATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter is before the Court on the parties' competing motions for summary judgment. (Docs. 57, 64). The parties have submitted briefs and evidentiary materials in support of their respective positions, (Docs. 58-63, 65, 69-75), and the motions are ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the defendants' motion is due to be granted in part and denied in part and that the plaintiff's motion is due to be denied.

## BACKGROUND

The plaintiff, a black male, sought a number of positions within the Escambia County school system, obtaining none of them. He sues the Escambia County Board of Education ("the Board"), superintendent William Hines, assistant superintendent Mary Beth Powell, human resource director/EEOC supervisor Mona Simmons, and Rachel Patterson Elementary School principal Susan McKenzie.

The third amended complaint alleges that the plaintiff was denied the following positions:

| | | |
|---|---|---|
| October 2006 | Resource teacher/ Assistant principal | Rachel Patterson Elementary |
| August 2007 | Assistant principal | Escambia County High School |

| Fall 2007 | Assistant principal | Rachel Patterson Elementary |
| June 2008 | Assistant principal | Rachel Patterson Elementary |
| June 2008 | Assistant principal | Escambia County High School |

(Doc. 24 at 3-5).[1]  The third amended complaint continues that the plaintiff filed an internal complaint of discrimination in November 2007 and an EEOC charge of discrimination in January 2008.  (*Id*. at 4).  The third amended complaint alleges that each of the defendants engaged in race discrimination and retaliation in violation of 42 U.S.C. §§ 1981 and 1983 and that the Board also engaged in race discrimination and retaliation in violation of Title VII.  (*Id*. at 6-7).

## DETERMINATIONS OF UNCONTROVERTED FACT

The plaintiff is black.  He applied for the position of resource teacher at Rachel Patterson Elementary School in October 2006.  McKenzie conducted the interviews and made the recommendation for hire.  McKenzie recommended Ann Stephens, a white female.  McKenzie recommended the hiring of Stephens because she wanted to improve the school's math scores, and Stephens had been a math teacher while the plaintiff had not.  McKenzie also relied on reports that the plaintiff had backed out of a teaching commitment at the last minute.

In the fall of 2007, Stephens obtained another position.  McKenzie decided to convert the vacant position to a kindergarten position, in response to changing demographics, and she received permission from Hines to do so.  There was no position of resource teacher during the 2007-2008 school year, and the position was not advertised or filled during that school year, and the plaintiff did not apply for it.  McKenzie used three classroom teachers to assist in the office periodically, in addition to their classroom duties and without additional compensation.

---

[1] A number of other employment decisions are discussed in the defendants' brief after having been addressed in the plaintiff's deposition.  Because these employment decisions are not made part of the third amended complaint and have not otherwise been made a part of this lawsuit, they will not be discussed herein.

In June 2008, the plaintiff applied for the position of assistant principal at Rachel Patterson. The position was filled by Dr. Auty Horn, like the plaintiff a black male. McKenzie recommended that Dr. Horn be hired based on his experience as an assistant principal and his work with the State Department of Education.

In June 2008, the plaintiff applied for the position of assistant principal at Escambia County High School. Principal Harvey Means did not interview the plaintiff but recommended David Lanier, a white male, for the position. Means did not know that the plaintiff had filed an internal complaint in November 2007 and an EEOC charge in January 2008.

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and 42 U.S.C. § 2000e-5(f)(3). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3).

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). "If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. [citation omitted] If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick*, 2 F.3d at 1115.

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant ...." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Accordingly, the Court's review is limited to those legal arguments the parties have expressly advanced.

Both the plaintiff's motion for summary judgment and his brief in opposition to the defendants' motion for summary judgment focus exclusively on his June 2008 application for the position of assistant principal at Escambia County High School. The defendants conclude that the plaintiff has thereby "abandoned" his claims as to all other applications and that he has similarly abandoned his claims against McKenzie, Powell and Hines, whom he does not mention in his briefs. (Doc. 74 at 1).[2]

Because Federal Rule of Civil Procedure 56(c) specifies that summary judgment may be entered only when the record evidence shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law, "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion." *United States v. One*

---

[2] In fact, Hines is mentioned repeatedly. (Doc. 72 at 14; Doc. 73 at 2, 14).

*Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir. 2004). The quoted statement constitutes a holding. *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008). This rule does not allow a district court to enter summary judgment in favor of a defendant as to any claim presented in the third amended complaint merely because the plaintiff has not opposed the motion for summary judgment as to that claim or that defendant.

On the other hand, the Court's review when the plaintiff does not respond to a motion for summary judgment is less searching than when he does respond. "The district court need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials. [citation omitted] At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment." *One Piece of Real Property*, 363 F.3d at 1101. Should this review reveal a defendant's entitlement to summary judgment as to any particular claim, under *Dunmar* the Court will not consider any legal or factual arguments the plaintiff could have, but has not, asserted in opposition.

## I. Discrimination.

Because the plaintiff does not rely on direct evidence of discrimination, the shifting burden appropriate for cases resting on circumstantial evidence applies. In Title VII cases alleging discrimination, the burden is first on the plaintiff to establish a prima facie case. If he succeeds, the employer must meet its burden of producing evidence of one or more legitimate, nondiscriminatory reasons for the adverse employment action. The burden then shifts back to the plaintiff to show that the employer's proffered reasons are a mere pretext for illegal discrimination. *E.g., Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1228 (11th Cir. 2002). Section 1981 carries the same proof requirements and same analytical framework. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

The plaintiff frames his claims as being for failure to promote. The defendants deny the plaintiff was ever employed and describe the claims as being for failure to hire.

Because neither directs the Court to any evidence, or provides any argument, as to whether the plaintiff was or was not employed in the Escambia County school system, the Court assesses the existence of a prima facie case for both sorts of claim.

The plaintiff identifies the elements of a prima facie case of discriminatory failure to promote as follows: (1) the plaintiff is a member of a protected group; (2) he applied for a position for which he was qualified; (3) he was rejected despite his qualifications; and (4) the position was filled by one outside the plaintiff's protected group and with lesser or equal qualifications. (Doc. 62 at 3; Doc. 72 at 5). The defendants agree with this statement of the elements. (Doc. 59 at 16-17).[3]

The defendants identify the elements of a prima facie case of discriminatory failure to hire as follows: (1) the plaintiff is a member of a protected group; (2) he applied for a position for which the defendant was accepting applications; (3) despite his qualifications he was not hired; and (4) after his rejection, the position remained open or was filled by someone outside his protected class. (Doc. 59 at 17). The plaintiff expresses no disagreement with this rendition of the prima facie case.

The defendant's burden is usually described as one of articulating a reason "for the adverse employment action." *E.g., Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008). To meet its burden, the defendant must articulate a reason "legally sufficient" to justify judgment in its favor and must support the articulated reason "through the introduction of admissible evidence." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981). "Moreover, this Court has squarely held that an employer may not satisfy its burden of production by offering a justification which the employer either did not know or did not consider at the time the decision was made."

---

[3] It appears the plaintiff may have accepted a more onerous burden than necessary. He relies for his statement of the prima facie case on *Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079, 1089 (11th Cir. 2004), but in 1998 the Eleventh Circuit ruled that cases requiring a plaintiff to address relative qualifications at the prima facie case stage could not be good law under the prior-panel-precedent rule, since the earliest articulation of the prima facie case contained no such requirement. *Walker v. Wortham*, 158 F.3d 1177, 1186-93 (11th Cir. 1998).

*Turnes v. AmSouth Bank*, 36 F.3d 1057, 1061 (11th Cir. 1994). Rather, the defendant "must present specific evidence regarding the decision-maker's actual motivations with regard to each challenged employment decision." *Walker v. Mortham*, 158 F.3d 1177, 1181 n.8 (11th Cir. 1998).

"The inquiry into pretext requires the court to determine, in view of all the evidence, whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct" but "were a pretext for discrimination." *Crawford*, 529 F.3d at 976 (internal quotes omitted). The plaintiff's burden is to "demonstrate weaknesses or implausibilities in the proffered legitimate reason so as to permit a rational jury to conclude that the explanation given was not the real reason, or that the reason stated was insufficient to warrant the adverse action." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1279 (11th Cir. 2008); *accord Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004). Of course, "a reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Springer v. Convergys Customer Management Group Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (emphasis in original) (internal quotes omitted). To make this showing, the plaintiff may resort to "all the evidence," *Crawford*, 529 F.3d at 976, including "the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

### A.  October 2006.

According to the third amended complaint, the plaintiff applied for the position of resource teacher/assistant principal at Rachel Patterson Elementary, but the position was awarded to Ann Stephens, a white female. (Doc. 24 at 3).[4]

---

[4] The plaintiff admitted in deposition that the position was that of resource teacher, not assistant principal. (Plaintiff Deposition at 55).

The plaintiff is black, the defendants concede he applied for the position, and they do not suggest he was unqualified to receive it. The plaintiff was not hired, and a white applicant was awarded the position. This establishes for present purposes a prima facie case of discriminatory failure to hire. Because the defendants do not assert that the plaintiff was less qualified than Stephens, there is also presented a prima facie case of discriminatory failure to promote under the formulation proposed by the plaintiff.

The defendants offer evidence of two reasons for the selection of Stephens over the plaintiff. First, McKenzie wanted to increase the school's math scores, and Stephens had been a math teacher. Second, McKenzie had reservations about the plaintiff's reliability, given a report from her predecessor of the plaintiff's having backed out of a teaching commitment at Rachel Patterson at the last minute, leaving the principal in the lurch. (Doc. 10 at 4; McKenzie Affidavit at 2, 4). These are legally sufficient reasons for the plaintiff's non-selection, and they are supported by admissible evidence. The burden thus shifts to the plaintiff to demonstrate a genuine issue of material fact concerning pretext.

As noted, the plaintiff does not in his brief address this employment decision. However, he has filed as a separate document his response to the defendants' proposed determinations of uncontroverted fact. (Doc. 73). The plaintiff therein admits that his only basis for claiming race discrimination in this decision is that, because he is black and Rachel Patterson's student body is predominantly black, he had a "cultural advantage" over Stephens. (*Id*. at 6-7; Plaintiff Deposition at 60-61). Assuming without deciding that the plaintiff's race was or should have been a factor favoring his selection, it does nothing to undermine the articulated reason that McKenzie desired a math teacher, which Stephens was, while the plaintiff had taught social studies for ten years. (Plaintiff Deposition at 25). Certainly the selection of a white person to a position in a largely

black school cannot by itself raise an issue of pretext or race discrimination.[5]   The defendants are entitled to summary judgment as to this claim.[6]

### B.  August 2007.

According to the third amended complaint, the plaintiff applied for the position of assistant principal at Escambia County High School, but the position was awarded to Stephens.  (Doc. 24 at 3).  The plaintiff in deposition disavowed any contention that he was denied this position because of his race.  (Plaintiff Deposition at 76).  The defendants are thus entitled to summary judgment as to this claim.

### C.  Fall 2007.

According to the third amended complaint, once Stephens took the Escambia County job, the plaintiff "inquired about" the  position at Rachel Patterson that she had vacated, which the plaintiff describes as that of assistant principal.  The third amended complaint describes his inquiry as an "applica[tion]" for the position.  The plaintiff was advised that the position was being closed for the balance of the school year, only to learn

---

[5] The plaintiff complains that he rejected a teaching position at the last minute only because it was offered at the last minute.  He has no evidence, however, that McKenzie heard this version.  At any rate, even had the plaintiff raised a fact issue as to this articulated reason for his non-selection, he has not done so with respect to McKenzie's other stated reason for not hiring him, and that failure is fatal.  "In order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that *each* of the employer's proffered nondiscriminatory reasons is pretextual."  *Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc) (emphasis added).  Thus, "even if [the plaintiff] could discredit one of the reasons [the defendants] offered for not hiring him, it would still not establish pretext, because to do so, [the plaintiff] would have to establish that *each* of [the defendants'] reasons was pretextual."  *Cooper*, 390 F.3d at 730 (emphasis in original).

[6] The Title VII aspect of this claim is invalid for the additional reason that it is time-barred.  The plaintiff's EEOC charge is dated February 21, 2008 and stamped as received by the EEOC on February 23, 2008.  (Doc. 58, Exhibit 18).  "A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ...."  42 U.S.C. § 2000e-5(e)(1).   "Failure to file a timely complaint with the EEOC mandates the dismissal of the Title VII suit."  *Wilson v. Bailey*, 934 F.2d 301, 304 n.1 (11th Cir. 1991).

that a white male was placed in the position in an acting capacity despite his lack of certification to handle administrative responsibilities. (Doc. 24 at 3-4).

The uncontroverted facts paint quite a different picture. First, the position was not assistant principal but resource teacher. (McKenzie Affidavit at 2). Second, when Stephens left, McKenzie decided that the vacant position could be better used for an additional kindergarten teacher than for a resource teacher. (*Id*. at 4). She received permission from Hines to use the position for a kindergarten teacher rather than for a resource teacher. (*Id*.). Thus, there was no position of resource teacher during the 2007-2008 school year. (*Id*. at 2-3). The white male to whom the plaintiff refers was a classroom teacher who, along with two other teachers, assisted in the office on some days during non-instructional/resource periods without any additional compensation. (*Id*. at 3). The position of resource teacher was not advertised or filled during the 2007-2008 school year. (*Id*. at 5; McKenzie Deposition at 15-17). The plaintiff did not apply for the position. (*Id*. at 16).

Given the evidence, the plaintiff cannot establish a prima facie case of race discrimination. First, he has identified no evidence that he applied for the position. Second, he has identified no evidence that the employer was accepting applications. Third, because he did not apply and because the employer was not accepting applications, he was not rejected. Fourth, the position was not filled and did not remain open; instead, it was converted to a kindergarten slot. The defendants are entitled to summary judgment as to this claim.

### D.  June 2008 – Rachel Patterson Elementary.

According to the third amended complaint, the plaintiff applied for the position of assistant principal in June 2008 but was not awarded the position. (Doc. 24 at 4). It is uncontroverted that this position was awarded to a black male. (McKenzie Affidavit at 5). Because the position was filled by one within the plaintiff's protected group, he cannot establish a prima facie case of race discrimination. The defendants are entitled to summary judgment as to this claim.

**E. June 2008 – Escambia County High School.**

According to the third amended complaint, Stephens was promoted to a central office position, and the plaintiff applied for the vacant assistant principal position. The position was awarded to David Lanier, a white male, even though he did not possess the minimum qualification of a valid Alabama administrator's license. The plaintiff was not interviewed for the position. (Doc. 24 at 4-5).

It is uncontroverted that the plaintiff applied for the position, that he was rejected, and that one outside his protected group received the position. The defendants do not contend that the plaintiff was unqualified for the position, so a prima facie case of discriminatory failure to hire is established for present purposes. There is some dispute as to whether Lanier was equally or more qualified, so the Court delays consideration of the plaintiff's prima facie case of discriminatory failure to promote.

The defendants offer admissible evidence from principal Harvey Means, who interviewed the applicants and recommended Lanier's hire, of legally sufficient legitimate, nondiscriminatory reasons for not interviewing the plaintiff and for selecting Lanier over the plaintiff: (1) the plaintiff had no administrative experience; (2) the plaintiff had a break in his work history and had not held a full-time teaching job for a long period of time; (3) Lanier was already employed at the school as a counselor, which was an asset given that Means had been hired from outside the system only a few weeks before; (4) Lanier had experience in the high school setting, another asset given that Means was coming from a middle school position; and (5) Lanier was friendly and professional, and he articulated a clear vision of the school's mission in meeting instructional goals and how he would assist in increasing test scores. (Means Affidavit at 2-3). The burden shifts back to the plaintiff to demonstrate that these reasons are a pretext for race discrimination.

**1. Administrator's license.**

The plaintiff emphasizes that he held, and Lanier lacked, a valid Alabama administrator's license. The notice of vacancy for the assistant principal position listed several "minimum qualifications" for the position, including a "[v]alid Alabama administrator's license." (Doc. 65, Exhibit A). The plaintiff argues that this shows pretext in two ways: (1) the defendants violated their own policy in awarding Lanier the position; and (2) the plaintiff was more qualified for the position. (Doc. 72 at 7-8).

There is evidence that the defendants have a policy of considering a valid certificate a minimum qualification for a teaching or administrative position, as a series of contracts entered between Lanier and the school system include the warning that "[i]t is illegal for the superintendent of education to sign a contract with any person who does not hold the appropriate valid certificate for his (her) position issued by the State Department of Education." (Doc. 65, Exhibit E). The defendants do not deny they have such a policy.

There is also evidence that this policy extended to the June 2008 hiring of an assistant principal at Escambia County High School, since the notice of vacancy listed the holding of a valid administrator's license as a minimum qualification for the position.

There is in addition evidence that the defendants violated this policy by hiring Lanier. Lanier applied for the position on June 25, 2008. He was interviewed by Means on June 26. The same day, Means recommended his hiring to Hines, Hines recommended his hiring to the Board, and the Board approved the hire. The hiring was effective July 28, 2008. At the time of his application, Lanier had completed his coursework for certification, but he had failed the written examination required for certification. Lanier took the examination again in July 2008. In October 2008, he was awarded an administrator's license, which was made retroactive to July 28, 2008. There is thus evidence that Lanier did not have a valid Alabama administrator's license on June 25, June 26 or even July 28.[7]

_____

[7] The defendants admit Lanier was not certified in June 2008, but they argue this is irrelevant because Lanier was certified in July 2008, when his hiring became effective. The
(Continued)

"The bending of established rules may, of course, be suggestive of discrimination." *Walker v. Prudential P&C Insurance Co*., 268 F.3d 1270, 1279 (11th Cir. 2002). However, "[s]tanding alone, deviation from a company policy does not demonstrate discriminatory animus." *Mitchell v. USBI Co*., 186 F.3d 1352, 1355-56 (11th Cir. 1999). "To establish pretext, a plaintiff must show that the deviation from the policy occurred in a discriminatory manner." *Rojas v. Florida*, 285 F.3d 1339, 1344 n.4 (11th Cir. 2002). Thus, "*inconsistent* application of employment policies [may be] circumstantial evidence of discrimination." *Berg v. Florida Department of Labor and Employment Security*, 163 F.3d 1251, 1255 (11th Cir. 1998) (emphasis added).

The defendants argue they have not inconsistently applied their policy of requiring state certification. In particular, they maintain that "[i]t has been the practice within the Escambia County school system to consider someone who has met the coursework requirements as certified for purposes of meeting the requirements of a job posting." (Powell Affidavit at 2). That is, they assert that their uniform practice is to water down their stated policy from actual certification to potential future certification based on completed coursework.

To bolster this assertion, the defendants provide figures and examples, but these do not address the issue here. The defendants state that, in the past three school years the Board has "hired at least 50 employees whose certificate was not issued at the time they applied even though certification was listed as a minimum job requirement." (Powell Affidavit at 3). For all that appears from this statement, these employees may have passed all requirements for certification (not just coursework) at the time of application,

---

defendants' position is inaccurate, because Lanier had no certification until October; that the license was made retroactive to July does not mean that Lanier in fact held a license in July. On the contrary, Lanier served as an administrator without a valid license from July until October. Moreover, the defendants' sole case says only that the successful applicant's failure to hold all minimum qualifications at the time of application is irrelevant to pretext when the applicant holds all such qualifications at the time the job is offered. Here, Lanier was offered the job one day after he applied, when he unquestionably did not hold a valid administrator's license.

such that the issuance of a certificate was guaranteed (not just possible).  Similarly, for all that appears from this statement, the certificates may have been issued before the individuals were hired.  The statement is thus unhelpful to the defendants' position.

The defendants also list six specific employees (including three blacks) whose certificates were issued months after they were hired.  (Powell Affidavit at 3-4).  Again, however, the defendants do not provide information as to whether these employees had merely completed coursework when hired or had also completed all other requirements for certification, such that certification was inevitable though delayed for reasons unexplained.  The examples thus do not strengthen the defendants' position.

Even without supporting evidence, Powell's statement that the defendants follow a practice of considering applicants as certified if they merely have completed their coursework for certification constitutes evidence that the defendants have not inconsistently applied their policy of requiring certification but have in practice consistently required only the completion of coursework.  The plaintiff has identified no example of the defendant following a different practice on any occasion.[8]

Instead, the plaintiff notes that the defendants, as their contracts make plain, were fully aware that it was "illegal" for them to hire applicants "who do[] not hold the appropriate valid certificate," and he argues it is facially implausible that the defendants would repeatedly and deliberately break the law by hiring persons without the legally required certificates.

The plaintiff cites, and the Court has located, no case addressing such an argument.  It may well be that, under appropriate circumstances, the tension between an employer's claimed consistent practice and its contrary legal obligations would be sufficient to support a genuine issue of material fact as to whether the employer actually had such a practice or instead treated the plaintiff differently from others.  But where, as

---

[8] The plaintiff notes that Lanier received a position in 2005 when the only other applicant was not certified.  (Doc. 72 at 9; Doc. 65, Exhibit F).  But the plaintiff has no evidence that the other applicant had completed his or her coursework for certification and so has not shown the defendants' practice to have been inconsistently applied on that occasion.

here, the legal violation has not been shown to be a serious one, likely to be caught and likely to result in significant negative repercussions for the school system, the Court is unprepared to conclude that the nominal illegality of the claimed practice is sufficient of itself to create a fact issue as to whether the practice --- the existence of which is supported by sworn testimony --- in fact exists.[9] The plaintiff has thus failed to provide evidence of an inconsistent application of policy, and he therefore cannot rely on an inconsistent application of policy as suggesting pretext.[10]

The preceding discussion answers the plaintiff's challenge to relative qualifications. The plaintiff argues that, since he had an administrator's license in June 2008 and Lanier did not, only he satisfied the minimum qualifications for the position, and therefore he was more qualified than Lanier. (Doc. 75 at 4). Since, however, the defendants considered completion of coursework to satisfy the certification requirement, and since Lanier had completed his coursework, he satisfied the defendants' minimum qualifications, evaporating the plaintiff's argument. As the plaintiff acknowledges, "we focus on the employer's requirements and do not second-guess the employer's business judgment.'" (Doc. 72 at 7 (quoting *Turner v. City of Auburn*, 361 Fed. Appx. 62, 65 (11th Cir. 2010)). It is uncontroverted that the defendants required only completion of coursework for certification, not actual certification, and the Court may not second-guess that business judgment.

---

[9] The plaintiff's discussion of illegality is confined to the quoted material in Lanier's contracts, with no reference to, or discussion of, any actual law, its enforcement, or its ramifications.

[10] The plaintiff believes that Powell's sworn testimony is not uncontroverted because Means testified that he is "not sure" if the practice Powell described exists. (Doc. 72 at 10). Powell is the assistant superintendent while Means is but a principal, so it is unclear how his uncertainty or ignorance could draw her testimony into question. The plaintiff notes that Means was a 30(b)(6) representative, but he has not identified the topics as to which the deposition was noticed, and the Court cannot assume that Means was proffered to speak for the entity as to the content of its policies and practices concerning the relationship between certification and hiring.

## 2. Balance.

The plaintiff has produced evidence that Means told him in early June 2008 that Hines told Means he "wanted balance" at the school and that Lanier "was the man for the job." (Doc. 73 at 14; Plaintiff Affidavit at 8; Plaintiff Deposition at 88-91). Because the principal (Means) and one assistant principal were both black, the plaintiff concludes that Hines was telling Means to select a white as the other assistant principal.

The defendants respond that Hines denies the statements and Means does not recall them, (Doc. 59 at 26), but these protestations do not eliminate a fact issue as to whether they were made. The defendants note that pre-selection of a candidate, as by Hines, is permissible unless based on race, (Doc. 74 at 9), but as discussed below the plaintiff has evidence of a race-based motivation.

The defendants argue that, since Means did not say "racial balance," there can be no reasonable inference that Hines meant racial balance. (Doc. 74 at 13-15). The single case the defendants cite is wholly inapposite. While there may be times when the term "balance" is racially neutral, when it is used by a white superintendent to a black principal with a black assistant principal to describe how the other assistant principal slot --- just vacated by a white incumbent --- should be filled, and when a specific white individual is named by the superintendent as the appropriate candidate, there is more than enough evidence for a properly functioning jury to conclude that Hines was telling Means to select a white applicant for the position. It is notable that the defendants have suggested no alternative, racially neutral meaning that could have been intended by Hines' alleged use of the term "balance."

There is also evidence from which a properly functioning jury could conclude that Means complied with Hines' direction and based his recommendation on racial grounds. Four persons applied for the position, and Means interviewed three of them --- all white. This procedure ensured that the successful candidate would be white even if not Lanier. Means says he did not interview the plaintiff because he had no administrative experience and because he had a gap in his work history, but a properly functioning jury could find these explanations to be pretextual. When asked by the EEOC why the plaintiff was not

considered for the position, the defendants listed neither of these reasons, (Doc. 75, Exhibit 1), which omission would allow a jury to conclude they were concocted after the fact. Moreover, the plaintiff asserts --- and the defendants do not challenge --- that Lanier also had no administrative experience, yet he was interviewed nonetheless.

The defendants do not deny that a direction to maintain racial balance would constitute evidence that the hiring decision was motivated at least in part by race. *See, e.g., Taylor v. Board of Education*, 240 Fed. Appx. 717, 720 (6th Cir. 2007) (a decisionmaker's statement that a person was hired to maintain racial balance constituted direct evidence of discrimination); *Doughtie v. Ashland, Inc*., 2005 WL 1239286 at *7 (W.D. Tenn. 2005) (similar). Viewed in the light most favorable to the plaintiff, his evidence would allow a properly functioning jury to find that Hines instructed Means to select a white candidate to fill the second assistant principal position. The Court concludes that the plaintiff's evidence concerning "balance" is sufficient on its own to "cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct" but "were a pretext for discrimination." *Crawford*, 529 F.3d at 976.[11]

### 3. Defendants potentially liable.

The plaintiff has identified no evidence that Powell, Simmons or McKenzie were in any way involved in the hiring decision. As to them, summary judgment is appropriate. Means was not authorized to hire Lanier on his own; instead, he recommended to Hines that Lanier be hired. Hines, in turn, recommended to the Board that Lanier be hired, and the Board approved the hire. Hines and the Board are thus both potentially liable.

---

[11] Because the plaintiff clearly survives summary judgment under the formulation of the prima facie case championed by the defendants for failure to hire, it is unnecessary for the Court to consider whether he can also establish a prima facie case (and thus survive summary judgment) under the alternate formulation he says is applicable to a failure to promote.

The defendants suggest generally that Hines is entitled to qualified immunity. (Doc. 59 at 15-16). Under the plaintiff's version of the evidence, Hines purposely discriminated against him on the basis of his race, and qualified immunity is not available under such circumstances. *E.g., Alexander v. Fulton County*, 207 F.3d 1303, 1321 (11th Cir. 2000) ("[T]here can be no doubt that in December 1992 ... it was clearly established that intentional discrimination in the workplace on account of race violated federal law."). The defendants, whose only argument concerning qualified immunity is that Hines did not discriminate, (Doc. 59 at 16, 25-27), make no argument that Hines could receive qualified immunity despite intentionally violating clearly established law prohibiting such discrimination.

The defendants argue the Board cannot be liable because the plaintiff cannot show an issue of fact as to pretext. (Doc. 59 at 29). As discussed above, he can and he has. The defendants recognize that entity liability can be based on a "cat's paw" theory. (Doc. 74 at 9). *See, e.g., Crawford*, 529 F.3d at 979 n.21 ("Under a 'cat's paw' theory, a non-decisionmaking employee's discriminatory animus may be imputed to a neutral decisionmaker when the decisionmaker has not independently investigated allegations of misconduct."). They argue, however, that no such theory applies in this case, because it addresses only a discriminatory recommendation to a higher level person or group, and here the plaintiff says Hines directed Means, a lower-level employee, to select a white assistant principal. (Doc. 74 at 9-10). The defendants, however, admit that Hines recommended to the Board that it hire Lanier, and the Board hired him "[u]pon the recommendation" of Hines. (Doc. 69 at 3). According to the plaintiff's evidence, then, Hines is the biased employee, he made a biased recommendation to the Board, and the Board hired Lanier based on that biased recommendation. That is a paradigmatic cat's paw scenario.

## II. Retaliation.

The plaintiff's retaliation claims are based on his filing of an internal complaint in November 2007 and an EEOC charge in January 2008. (Doc. 24 at 4). Because they

occurred before these events, the hiring decisions made in October 2006, August 2007 and the fall of 2007 cannot be the subject of a retaliation claim. To the extent the third amended complaint asserts retaliation claims based on those hiring decisions, the defendants are entitled to summary judgment.

The same burden-shifting paradigm utilized in discrimination cases applies as well to cases alleging retaliation under Title VII. *Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999). "A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford*, 529 F.3d at 970. If the plaintiff makes out a prima facie case, the defendant must produce evidence of legitimate reasons for the employment decision. If it does so, the plaintiff must show that these reasons are a pretext for prohibited retaliatory conduct. *Sullivan*, 170 F.3d at 1059.

### A.  June 2008 – Rachel Patterson Elementary.

McKenzie interviewed applicants and made the recommendation that Dr. Auty Horn be hired. (Doc. 73 at 10). The plaintiff admits that McKenzie made her recommendation based on Dr. Horn's experience as an assistant principal and his work with the State Department of Education, (*id.*), and he has identified no evidence that McKenzie's decision was based on, or influenced by, his internal complaint or EEOC charge. McKenzie made her recommendation to Hines, who recommended Horn to the Board, which approved Horn's hire. (McKenzie Affidavit, ¶ 12; Hines Affidavit, ¶ 22). The plaintiff has identified no evidence that either Hines or the Board infected the decision with retaliatory motive, and no evidence that Powell or Simmons had any connection to the employment decision. Accordingly, the defendants are entitled to summary judgment as to this claim.

### B.  June 2008 – Escambia County High School.

Because, as the defendants point out, the plaintiff has no evidence that Powell, Simmons or McKenzie had anything to do with this employment decision, they are entitled to summary judgment as to the plaintiff's claim of retaliation.

As the defendants note, (Doc. 59 at 7), Means did not know that the plaintiff had filed an internal complaint or an EEOC charge. (Means Affidavit, ¶ 9).[12] As they also note, (Doc. 59 at 29-30), "[t]o establish a causal connection, a plaintiff must show that the decisionmakers were aware of the protected conduct …." *Gupta v. Florida Board of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (internal quotes omitted). Thus, the plaintiff cannot establish that the employment decision was infected by Means' retaliatory motive.

As to Hines and the EEOC, the defendants do not contest the plaintiff's ability to establish a prima facie case of retaliation. Instead, they rely on the legitimate reasons articulated in defense of the plaintiff's discrimination claim and the plaintiff's asserted inability to raise a fact issue as to whether these reasons are a pretext for illegal retaliation. (Doc. 59 at 27). As with discrimination, the plaintiff points to Lanier's lack of an administrator's license as demonstrating pretext. (Doc. 72 at 13-14). As discussed in Part I.E, the plaintiff has not supported a pretext argument based on this circumstance.

The plaintiff next argues that the defendants lied to the EEOC by telling it that he had been interviewed and that Lanier was a certified employee. (Doc. 72 at 12). The document on which the plaintiff relies, however, does not state that Lanier was certified as an administrator but only that he was a "full-time certificated employe[e] of the district" when he was interviewed. (Doc. 65, Exhibit G). This was a correct statement, as Lanier held a teaching certificate in June 2008. (*Id.*, Exhibit D). While the document does state that "the charging party was one of the three applicants interviewed," it also states that "[t]he racial and gender composition of the applicants were [sic] three white males," all of them full-time employees, and that the plaintiff was not a full-time

---

[12] The plaintiff insists he told Means "about the problems I was having in Escambia County." (Doc. 73 at 12; Plaintiff Affidavit at 8). He does not, however, assert that he told Means he had filed a complaint or charge opposing unlawful race discrimination, as would be required to trigger protection under the plaintiff's retaliation claims.

employee of the district. (*Id.*, Exhibit G). The document thus clearly explained that the interviewees were white, full-time employees and that the plaintiff was black and not a full-time employee. No reasonable person reading the document could conclude that the plaintiff had been interviewed for the position. Any residual ambiguity in what the defendants told the EEOC does not translate into evidence that their articulated reasons for the employment decision are a pretext for retaliation.

Finally, the plaintiff again challenges the accuracy of Means' stated reasons for not interviewing him. As noted in Part I.E, a jury could find that these were not Means' true reasons, but the plaintiff has offered no evidence or explanation how a jury could find that Means' true motive was retaliation. As noted above, it is uncontroverted that Means was unaware of the plaintiff's allegedly protected conduct and thus could not have retaliated against him based on that conduct.

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is **denied** with respect to the plaintiff's claim against Hines and the Board for race discrimination in the June 2008 selection of an assistant principal for Escambia County High School. The defendants' motion for summary judgment is **granted** in all other respects. The plaintiff's motion for summary judgment is **denied**.

DONE and ORDERED this 8th day of July, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE